RNN/rn

1 5 2000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **00-6319**

18 U.S.C. §371

CR - DIMITROULEAS

MAGISTRATE JUDGE
SNOW

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) |
| DAWN SWILLING, | ) |
| Defendant. | ) |

## INFORMATION

The United States Attorney charges that:

### COUNT 1

GENERAL ALLEGATIONS:

At all times relevant to this information:

1. DAWN SWILLING was a licensed chiropractor in the State of Florida.

2. DAWN SWILLING practiced chiropractic at Sunstate Doctors Center, P.A., located at 3529 North Pine Island Road, Sunrise, Florida.

3. DAWN SWILLING and Sunstate Doctors Center, P.A., were Medicare providers authorized to submit claims to the Medicare Part B program and to Medicare contracted health maintenance organizations (HMO's) for certain chiropractic services provided to Medicare beneficiaries.



4. Medicare was a program designed to provide medical services, medical equipment and supplies to elderly, blind and disabled beneficiaries pursuant to the Social Security Act (Title 42, United States Code, Section 301 et seq.). The Medicare program was and is administered by the United States Department of Health and Human Services ("HHS"), through the Health Care Financing Administration (HCFA).

5. The United States Department of Health and Human Services was and is a Department of the United States with responsibilities pursuant to federal law for the funding, administration and supervision of certain health care benefit programs, including the Medicare program. HCFA was and is an agency of the United States.

6. HHS, through HCFA, contracted with a "carrier," Blue Cross and Blue Shield of Florida (BC/BS), and later First Coast Service Options (First Coast), to administer the Medicare program as it related to Part B claims in Florida.

7. HHS, through HCFA, also contracted with and funded certain qualified health maintenance organizations to provide health insurance coverage to Medicare beneficiaries who chose to join a Medicare HMO plan instead of participating in the regular Medicare Part B program.

8. The Medicare Part B program provided payment or reimbursement for certain medically necessary services provided by chiropractors and their staff to Medicare Part B beneficiaries.

9. Medicare HMO's provided payment or reimbursement for certain medically necessary services provided by chiropractors and their staff to Medicare beneficiaries as set forth in the individual Medicare HMO's coverage plan.

10. BC/BS and First Coast, on behalf of HHS/HCFA, accepted claims for payment and reimbursement submitted by chiropractors and other physicians on "Health Insurance Claim Forms," also known as "HCFA Form 1500."

11. BC/BS and First Coast, on behalf of HHS/HCFA, adjudicated and processed claims submitted by chiropractors and other physicians for payment and reimbursement, and made Medicare program payments to chiropractors and other physicians based upon information provided in submitted Health Insurance Claim Forms (HCFA Form 1500).

12. Medicare HMO's accepted claims for payment and reimbursement submitted by chiropractors and other physicians on Health Insurance Claim Forms (HCFA Form 1500).

13. Medicare HMO's adjudicated and processed claims submitted by chiropractors and other physicians for payment and reimbursement, and made payments to chiropractors and other physicians based upon information provided in submitted Health Insurance Claim Forms (HCFA Form 1500).

14. To receive payment from Medicare for medical or chiropractic services provided to Medicare Part B beneficiaries, chiropractors and other physicians in Florida were required to submit Health Insurance Claim Forms (HCFA Form 1500) to the Medicare Part B carrier, BC/BS and later First Coast, containing the dates of the services provided, the diagnoses of the conditions treated, and procedures performed.

15. To receive payment from Medicare HMO's for medical or chiropractic services provided to Medicare beneficiaries, chiropractors and other physicians were required to submit Health Insurance Claim Forms (HCFA Form 1500) to the Medicare HMO containing the dates of the services provided, the diagnoses of the conditions treated, and procedures performed.

16. AV-MED Medicare HMO was a Medicare contracted and funded health maintenance organization under the Medicare Program.

17. DAWN SWILLING and Sunstate Doctors Center, P.A., were also authorized to submit claims for services to certain private health insurance carriers, including Blue Cross/Blue Shield of Florida, United Healthcare, HIP Health Plan of Florida, CIGNA Health Care, Principal Mutual Life, New England Financial, and Humana Workers Compensation Services, for medically necessary chiropractic services.

18. To receive payment from private health insurance carriers for medical or chiropractic services provided to insured patients, chiropractors and other physicians were required to submit Health Insurance Claim Forms (HCFA Form 1500) to the pertinent private health insurance carrier containing the dates of the services provided, the diagnoses of the conditions treated, and the procedures performed.

19. To aid in processing and adjudication of claims submitted to Medicare Part B, Medicare HMO's and to private health insurance carriers, chiropractors and other physicians were required to use standardized codes to describe the pertinent diagnoses and the procedures for which payment was sought. With respect to diagnoses, chiropractors and other physicians were required to use the codes established in the International Classification of Diseases Manuel (ICD-9 CM). With respect to procedures for which payment was sought, chiropractors and other physicians were required to use the codes established in the Physicians' Current Procedural Terminology code book (CPT) and the Health Care Financing Administration Common Procedural Coding System book (HCPCS).

## CONSPIRACY

20.     From on or about January 1, 1996, the exact date being unknown to the United States Attorney, and continuing to on or about July 19, 2000, in Broward County, in the Southern District of Florida and elsewhere, the defendant,

## DAWN SWILLING,

did knowingly and willfully combine, conspire, confederate and agree with other persons known and unknown to the United States Attorney to commit offenses against the United States, namely:

(a) Making and presenting false claims against the Medicare Program, in violation of Title 18, United States Code, Section 287; and

(b) Mail Fraud, in violation of Title 18, United States Code, Section 1341.

## OBJECT OF THE CONSPIRACY

21.     It was the object of the conspiracy that DAWN SWILLING, through Sunstate Doctors Center, P.A., with other known and unknown co-conspirators, would receive payments for which they were not entitled to from the Medicare program and from certain private health insurance carriers for services not rendered, for services not rendered as claimed, and for medically unnecessary services.

## MANNER AND MEANS OF THE CONSPIRACY

22.     It was part of the conspiracy that claims, using HCFA Form 1500, would be prepared and submitted against the Medicare program for services not rendered, for services not rendered as claimed, and for medically unnecessary services.

5

23. It was also part of the conspiracy that claims, using HCFA Form 1500, would be prepared and submitted to various private health insurance carriers claiming payment for services not rendered, for services not rendered as claimed, and for medically unnecessary services.

24. It was also part of the conspiracy that claims for services not rendered, claims for services not rendered as claimed, and claims for medically unnecessary services would be placed in the United States mail for delivery to the Medicare program and to various private health insurance carriers as part of a scheme to defraud the Medicare program and the various private health insurance carriers.

25. It was also part of the conspiracy that proceeds of the scheme to defraud the Medicare program and various private health insurance carriers would be received through the United States mail from the Medicare program and from the various private health insurance carriers.

26. It was also part of the conspiracy that Medicare beneficiaries and persons covered by various private health insurance carriers would receive payments, free non-covered services, and other items of value, in exchange for their participation in the scheme to defraud the Medicare program and the various private health insurance carriers.

## OVERT ACTS

27. In furtherance of the conspiracy and to effect its objects, one or more of the conspirators, within the Southern District of Florida, and elsewhere, during the time period covered by this information, mailed and caused to be mailed to the Medicare carrier for Florida, AV-MED Medicare HMO and to various private health insurance carriers, including Blue Cross/Blue Shield of Florida, United Healthcare, HIP Health Plan of Florida, CIGNA Health Care, Principal Mutual Life, New England Financial, and Humana Workers Compensation Services, numerous HCFA Form

6

1500's containing false and fraudulent information regarding the services for which payment was being sought.

28. In particular, on or about July 20, 1999, DAWN SWILLING placed and caused to be placed in the United States mail for delivery to Blue Cross/Blue Shield of Florida a HCFA Form 1500 that sought payment of $160 for services that were not rendered as claimed in the HCFA Form 1500.

29. In particular, on or about August 3, 1999, DAWN SWILLING placed and caused to be placed in the United States mail for delivery to Blue Cross/Blue Shield of Florida a HCFA Form 1500 that sought payment of $160 for services that were not rendered as claimed in the HCFA Form 1500.

All in violation of Title 18, United States Code, Section 371.

GUY A. LEWIS
UNITED STATES ATTORNEY

ROBERT N. NICHOLSON
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name: ___Dawn Swilling_____ No.: _____

**Count #:1**
Conspiracy to commit offenses against the United States

Title 18, United States Code, Section 371

*Max. Penalty: 5 years' imprisonment and a fine of up to the greater of $250,000 or twice the amount of the fraud.

**Count #:**



*Max. Penalty:

**Count #:**



*Max. Penalty:

**Count #:**



*Max. Penalty:

**Count #:**



*Max. Penalty:

**Count #:**



*Max. Penalty:

page 1 of 1.

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

REV. 12/12/96

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|
| v. | **CERTIFICATE OF TRIAL ATTORNEY*** |
| Dawn Swilling | **Superseding Case Information:** |

**Court Division:** (Select One)

New Defendant(s)    Yes ___  No ___
Number of New Defendants ___
Total number of counts ___

___ Miami  ___ Key West
_X_ FTL  ___ WPB ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:       (Yes or No) _No_
   List language and/or dialect _____

4. This case will take _1_ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                         (Check only one)

   I    0 to 5 days    _X_      Petty    ___
   II   6 to 10 days   ___      Minor    ___
   III  11 to 20 days  ___      Misdem.  ___
   IV   21 to 60 days  ___      Felony   _X_
   V    61 days and over ___

6. Has this case been previously filed in this District Court? (Yes or No) _No_
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) _No_
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: 00-4723-SNOW; 00-4724-SNOW
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____    District of _____

   Is this a potential death penalty case? (Yes or No) _NO_

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 1999? _X_ Yes ___ No    If yes, was it pending in the Central Region? _X_ Yes ___ No

8. Did this case originate in the Narcotics Section, Miami? ___ Yes _X_ No

ROBERT N. NICHOLSON
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 933996

*Penalty Sheet(s) attached                                              REV.6/27/00