UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,  

    v.

DAWN SWILLING,

_____ /

DOCKET NO. 00-6319-CR-Dimitrouleas
Defendant No. 1
Guideline Manual: 2000

## OBJECTIONS TO PRESENTENCE REPORT

DAWN SWILLING, by and through her undersigned counsel, files this her Objections to the Presentence Report and would show:

1. Paragraph 16 – the $700.00 payments to Posner were for the auto cases, not all cases. Further, the range varied between approximately $200.00 to $700.00 per case. Swilling's checks will substantiate the actual figures.

2. Paragraph 22 – reference the allegation of oral sex, the only patient involved was the courtroom deputy. The allegation reference the Sunrise Utilities Employee was that he had a tendency to grope both Swilling and some of her employees.

3. Paragraph 23 – reference the statement about x-rays having been added to claim forms to meet deductibles, it is necessary to point out that the x-rays were actually taken. These are not phantom charges.

4. Paragraph 29 – Swilling objects to the Department of Probation's assessment of a §3B1.1(b) adjustment. Instead, Defendant believes that §3.B1.1(c) applies. Further, the two level increase pursuant to §3B1.1(c) was agreed to in the plea agreement between Defendant and the government. Finally, Defendant would assert that the information which



forms the basis of the Department of Probation's three level increase was obtained through the Defendant's proffer sessions and/or after the date of the first proffer session.

5. Paragraph 75 — although Dr. Swilling intended to distribute the funds from the sale of the business as described in this paragraph, her intentions have been modified due to discussions between the undersigned counsel and attorney Robert Nicholson on behalf of the government. In short, the intended distribution of proceeds may violate federal money laundering statutes. As such, the proceeds from the sale are being held in an escrow account set up by the undersigned firm. Any distributions would be limited, at this time, to those necessary for the Defendant's maintenance. No such distributions have been made as of the time of this writing.

6. Paragraph 85 — the $5,000.00 deposit for a ski trip was a loan to a company, High Altitude Ski Tours, run by Gary Van Florcke, the Defendant's live-in boyfriend. Defendant believes the money will be repaid.

7. Paragraph 87 — as of this writing, the Defendant has cashed the $60,000.00 whole life policy and currently holds the cash surrender value check.

8. Paragraph 88 — the Defendant was the owner of both insurance policies referenced in this paragraph and has cancelled both such policies. Defendant received a premium refund of approximately $50.00.

9. Paragraph 90 — Defendant believes her furnishings and personal effects to be worth approximately $10,000.00.

10. Paragraph 91 — although not anticipated during her interviews with the Department of Probation, Dr. Montadas paid Defendant checks in the amounts of $1,200.00 and $500.00 for covering his practice during the holidays when he was on vacation, as duties beyond those required by the Sales Contract. Also, Defendant's live-in boyfriend, Gary Van

Florcke has increased his contribution to approximately $500.00 per week towards joint household expenses due to Defendant's current lack of income.

11. Paragraph 98 – Defendant objects based upon the reasons raised in response to paragraph 29 above. Further, Defendant is filing contemporaneously to these Objections, her Acceptance of Responsibility pursuant to §3E1.1 and therefore asserts that the total offense level should be 17.

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by mail delivery this the 6th day of February 2001, to: KATHRYN GOMEZ, U.S. Probation Officer, 299 East Broward Blvd., #409, Ft. Lauderdale, FL 33301-1865.

CHARLES M. EISS, Esquire
LAW FIRM OF GLANTZ & GLANTZ, P.A.
Attorneys for Defendant
7951 SW 6th Street, #200
Plantation, FL 33324
(954) 424-1200
Fla. Bar #612073